1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

CENTRAL DISTRICT OF CALIFORNIA

8
9

10  DAVID WARNER,                          Case No. EDCV 19-2378-KK

11                    Plaintiff,

12           v.                            ORDER GRANTING IN PART AND
                                           DENYING IN PART DEFENDANTS'
13  MIDLAND CREDIT MANAGEMENT,             MOTION FOR SUMMARY
    INC., ET AL.,                          JUDGMENT
14
                      Defendant(s).
15
16
17                                    **I.**

18                            **<u>INTRODUCTION</u>**

19        Defendants Midland Credit Management, Inc. ("MCM"), Midland Funding,

20  LLC ("Midland Funding"), and Encore Capital Group, Inc. ("Encore") (collectively,

21  "Defendants")'s have filed a Motion for Summary Judgment, or in the Alternative,

22  Partial Summary Judgment ("Motion").  The parties have consented to the jurisdiction

23  of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

24  For the reasons set forth below, Defendants' Motion is GRANTED IN PART and

25  DENIED IN PART.

26  ///

27  ///

28  ///

## II.

## **PROCEDURAL HISTORY**

On December 11, 2019, Plaintiff David Warner ("Plaintiff") filed a Complaint asserting claims against Defendants arising from a credit card debt and Defendants' alleged unlawful debt collection efforts against Plaintiff.  ECF Docket No. ("Dkt.") 1. Specifically, Plaintiff asserts four causes of action: (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"); (2) violation of California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.33 ("Rosenthal Act"); (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210; and (4) intrusion upon seclusion.  ECF Docket No. ("Dkt.") 1.

On February 18, 2020, Defendants filed an Answer, including an affirmative defense of bona fide error, claiming "[a]ny alleged acts or omissions of Defendants giving rise to the claims of Plaintiff, if any, are the result of innocent mistake and/or bona fide error despite reasonable procedures implemented by Defendants."  Dkt. 8.

On January 14, 2021, Defendants filed the instant Motion seeking summary judgment on all of Plaintiff's claims arguing (a) Defendants did not violate the FDCPA; (b) Plaintiff's Rosenthal Act claims fail because Defendants did not violate the FDCPA; (c) even if Defendants' conduct constituted a violation of the FDCPA or Rosenthal Act, Defendants would not be liable pursuant to the bona fide error defense; (d) Plaintiff's intrusion upon seclusion claim fails because Defendants did not intentionally invade Plaintiff's privacy or act in a highly offensive manner; and (e) Plaintiff's UCL claim fails because it is predicated on Plaintiff's other deficient claims. Dkts. 40, 40-1.  Defendants filed the following documents in support of the Motion:

- Memorandum of Points and Authorities ("MSJ"), dkt. 40-1
- Statement of Uncontroverted Facts and Conclusions of Law, dkt. 40-2
- Declaration of Kimberly Larsen, defendant MCM's Process Excellence Manager ("Larsen Decl."), with Exhibits 1 to 15, dkts. 40-3, 42

1   • Declaration of Zachary C. Frampton, Defendants' counsel ("Frampton Decl."),

2     with Exhibits 1 to 2, dkts. 40-4, 41

3     On February 25, 2021, Plaintiff filed an Opposition.  Dkt. 49, Opp.  Plaintiff

4   filed the following in support of his Opposition:

5   • Statement of Genuine Disputes, dkt. 49-1

6   • Declaration of Plaintiff ("Plaintiff Decl.") with Exhibits A to J, dkt. 49-2

7   • Declaration of Laurie Warner, Plaintiff's spouse ("Warner Decl."), dkt. 49-3

8   • Declaration of Amir J. Goldstein, Plaintiff's counsel ("Goldstein Decl."), with

9     Exhibits K to N, dkt. 49-4

10    On March 8, 2021, Defendants filed a Reply.  Dkt. 50, Reply.  Defendants filed

11  the following in support of their Reply:

12  • Reply in Support of Statement of Uncontroverted Facts and Opposition to

13    Plaintiff's Additional Material Facts, including evidentiary objections, dkt. 50-1

14  • Supplemental Declaration of Zachary C. Frampton ("Frampton Suppl. Decl.")

15    with Exhibits 1 to 3, dkt. 50-2

16    The Motion thus stands submitted.

17                                    **III.**

18                          **LEGAL STANDARD**

19    Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

20  Procedure if the moving party demonstrates the absence of a genuine issue of material

21  fact and entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477

22  U.S. 317, 322 (1986); see also FED. R. CIV. P. 56.  A genuine issue of material fact will

23  exist "if the evidence is such that a reasonable jury could return a verdict for the

24  nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

25    When ruling on a summary judgment motion, the court must view all

26  inferences drawn from the underlying facts in the light most favorable to the

27  nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

28  587 (1986) (citation omitted).  Summary judgment is therefore not appropriate "where

                                        3

1  contradictory inferences may reasonably be drawn from undisputed evidentiary

2  facts[.]"  Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th

3  Cir. 1980).  Furthermore, the Court must not make credibility determinations with

4  respect to the evidence offered.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

5  Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita, 475 U.S. at 587).

6       An affidavit or declaration may be used to support or oppose a motion for

7  summary judgment, provided it is "made on personal knowledge, set[s] out facts that

8  would be admissible in evidence, and show[s] that the affiant or declarant is

9  competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  In addition,

10  pursuant to Local Civil Rule 56-3, the Court assumes the material facts as claimed and

11  adequately supported by the moving party are admitted to exist without controversy

12  except to the extent that such material facts are (a) included in the "Statement of

13  Genuine Disputes" and (b) controverted by declaration or other written evidence filed

14  in opposition to the motion.  L.R. 56-3.

15                                    **IV.**

16                **RELEVANT FACTUAL BACKGROUND**[1]

17       The Court finds the following material facts are undisputed and are admitted to

18  exist without controversy for the purposes of this Order, except as otherwise noted.

19  See Fed. R. Civ. P. 56(e)(2) (stating where a party fails to address another party's

20  assertion of fact properly, the court may "consider the fact undisputed for purposes

21

22  _____

23  [1]    To the extent certain facts, or conclusions, are not mentioned, the Court has not relied on them in reaching its decision.  In addition to considering the

24  Defendants' evidentiary objections, the Court has independently considered the admissibility of the evidence underlying both parties' papers and has not considered

25  facts that are irrelevant or based upon inadmissible evidence.  Further, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that

26  it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here.

27  Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary

28  will not be counted.").  Therefore, all objections not specifically addressed herein are OVERRULED AS MOOT.

1  of the motion"); L.R. 56-3 (stating facts not "controverted by declaration or other

2  written evidence" are assumed to exist without controversy).

3  **A.      DEFENDANT MIDLAND FUNDING ACQUIRES THE ROJO**

4  **ACCOUNT**

5       In November 2001, a credit card account in the name of "David Rojo" was

6  opened with HSBC Bank ("the Rojo account").  Larsen Decl., ¶ 7.  "David Rojo"

7  used Plaintiff's social security number to open the Rojo account.  Id.  Defendants

8  were not involved in the opening of the Rojo account.  Id., ¶ 8.

9       According to the Rojo account's May 11, 2007 billing statement, a debt of

10  $5,863.11 was charged on the account.  Id., Ex. 2.  The billing statement listed an

11  Irvine, California address for "David Rojo."  Id.

12       On June 29, 2007, HSBC Bank sold certain credit card accounts, including the

13  Rojo account, to Atlantic Credit & Finance Special Finance Unit, LLC ("ACF").  Id.,

14  ¶¶ 6, 7, Ex. 1.

15       On June 24, 2009, pursuant to an Account Purchasing Agreement, defendant

16  Midland Funding purchased the Rojo account from ACF.  Id., ¶¶ 8, 9, Exs. 3, 15.

17  Defendant Midland Funding, along with corporate affiliate and defendant MCM, is a

18  wholly owned subsidiary of defendant Encore.  Id., ¶ 5.  In the Account Purchasing

19  Agreement, ACF made representations and warranties to defendant Midland Funding

20  that "[a]ll due diligence information and information related to the Accounts in

21  [ACF's] possession and given to [defendant Midland Funding] is materially true and

22  accurate to the best of [ACF's] knowledge."  Id., ¶ 9, Ex. 15.  ACF further made

23  representations and warranties that the "[c]urrent [b]alance on each [a]ccount is the

24  legal, valid and binding obligation of each [c]ustomer except as enforcement may be

25  limited by bankruptcy, insolvency, receivership and other similar laws relating to or

26  affecting creditors' rights generally."  Id.  Additionally, to assist in detecting fraudulent

27  accounts and ensure no required information was missing erroneous, or incomplete,

28

1   defendant MCM ran multiple "scrubs," including but not limited to, bankruptcy and

2   Servicemembers Civil Relief Act checks, on the Rojo account.  Id.

3   **B.**     **DEFENDANTS' COLLECTION ACTIVITIES AGAINST "DAVID**

4         **ROJO"**

5         On or about August 2, 2009, defendant MCM, which was servicing the Rojo

6   account on behalf of defendant Midland Funding, sent "David Rojo" a debt

7   validation letter to the address of record on the Rojo account, informing "David

8   Rojo" of his right to contest the debt.[2] Id., ¶ 11.

9         On July 21, 2010, defendant Midland Funding filed a collection lawsuit against

10   "David Rojo" in case no. 30-2010-00391607 in Orange County Superior Court to

11   collect the balanced owed on the Rojo account.  Id., ¶ 12, Ex. 4.  On November 23,

12   2010, the lawsuit resulted in a default judgment against "David Rojo."  Id., ¶ 13, Ex. 5.

13         On or about May 9, 2018, defendant Midland Funding mailed the

14   "Memorandum of Costs after Judgment, Acknowledgment of Credit and Declaration

15   of Accrued Interest" to "David Rojo" at the address in Chino Hills, California where

16   Plaintiff resided at the time.  Id., ¶ 14, Ex. 6.  The memorandum indicated a judgment

17   principal amount of $8,714.32 and an accrued interest of $3,416.47 remained due on

18   the Rojo account.  Id.

19         Pursuant to a Writ of Execution (Money Judgment) dated July 15, 2019,

20   defendant MCM directed the Sacramento Sheriff's Department to levy

21   "[a]ll accounts in which ['David Rojo'] and/or individual with [Plaintiff's] social

22   security number [ ] has any interest in the control of US BANK NA[.]"  Id., ¶ 15, Ex.

23   7.  Because Plaintiff's social security number had been used to open the Rojo account,

24   the sheriff levied Plaintiff's U.S. Bank account in the amount of $329.64 and caused

25

26   [2]     It is unclear what the address of record on the Rojo account was at this time. The HSBC Bank May 11, 2007 billing statement was addressed to "David Rojo" in

27   Irvine, California, Larsen Decl., ¶ 8, Ex. 2, but on May 9, 2018, defendant Midland Funding sent documents to where Plaintiff resided in Chino Hills, California, id., ¶ 14,

28   Ex. 6.  It is, therefore, unclear when the address of record changed on the Rojo account.

1  an additional $100 bank fee to be deducted from Plaintiff's account.  Id.; Plaintiff

2  Decl., ¶ 10.

3  **C.   PLAINTIFF DISPUTES THE ROJO ACCOUNT**

4         On July 18, 2019, Plaintiff informed defendant MCM over the phone that

5  Plaintiff was not "David Rojo" and Plaintiff's bank account had been improperly

6  levied.  Larsen Decl., ¶ 16.  A representative from defendant MCM informed Plaintiff

7  that defendant MCM would open a dispute and send him paperwork to substantiate

8  the dispute.  Id.

9         Five days later, on July 23, 2019, defendant MCM sent a letter to Plaintiff's

10 address, stating defendant MCM had opened an investigation concerning Plaintiff's

11 dispute.  Id., ¶ 17, Ex. 9; Plaintiff Decl., ¶ 12, Ex. A.  The letter also included (1)

12 statements that Plaintiff has "the right to request substantiation of the debt" and

13 defendant MCM was "treating [Plaintiff's] dispute as a request for substantiation"; (2)

14 information regarding the Rojo account, including copies of billing statements and the

15 current balance; and (3) the name and address of the original creditor, HSBC Bank, in

16 the billing statements.  Id.  The letter further recommended Plaintiff submit: (a) a

17 copy of a police report, (b) a fully completed and executed Federal Trade Commission

18 Fraud Affidavit, or (c) a notarized fraud affidavit.  Id.

19        On August 27, 2019, having received no response from Plaintiff, defendant

20 MCM sent another letter to Plaintiff's address, stating that although defendant MCM

21 had determined defendant MCM's records were accurate, Plaintiff could provide a

22 written explanation and documentation to dispute defendant MCM's determination.

23 Larsen Decl., ¶ 18, Ex. 10; Plaintiff Decl., ¶ 13, Ex. B.

24        On August 29, 2019, Plaintiff sent defendant MCM a letter disputing defendant

25 MCM's determination and claiming defendant MCM was attempting to collect the

26 amount owed on the Rojo account from the wrong individual.  Plaintiff Decl., ¶ 15,

27 Ex. C.  The letter further indicated Plaintiff had "filed an identity theft case with the

28 City of Chino Hill" and directed defendant MCM to credit Plaintiff with "a full return

7

1   of $329.64 in addition to the $100.00 legal processing fee that was debited from

2   [Plaintiff's] US Bank account." Id.

3          On August 30, 2019, Plaintiff sent defendant MCM another letter providing

4   (a) a copy of a police report and (b) a copy of Plaintiff's Identity Theft Victim's

5   Complaint and Affidavit. Larsen Decl., ¶ 19, Ex. 11; Plaintiff Decl., ¶ 16, Ex. D.

6          On September 3, 2019, defendant MCM sent Plaintiff a letter stating defendant

7   MCM had opened an investigation into Plaintiff's dispute of the Rojo account and

8   was "ceasing all collection efforts until [the] conclusion of the investigation of

9   [Plaintiff's] dispute." Larsen Decl., ¶ 20, Ex. 12; Plaintiff Decl., ¶ 17, Ex. E.

10  Defendant MCM attached a copy of a HSBC Bank credit card statement addressed to

11  "David Rojo" to the letter. Plaintiff Decl., ¶ 18, Ex. F.

12         On September 17, 2019, Plaintiff sent defendant MCM another letter again

13  providing (a) a copy of a police report and (b) a copy of Plaintiff's Identity Theft

14  Victim's Complaint and Affidavit. Id., ¶ 22, Ex. G.

15         On September 25, 2019, defendant MCM sent Plaintiff a letter with an

16  "Acknowledgement of Satisfaction of Judgment" dated September 26, 2019 that

17  purported to deem the judgment fully satisfied. Id., ¶ 23, Ex. H.

18  **D.     DEFENDANT MCM'S REMEDIAL STEPS**

19         Based on the police report and affidavit submitted by Plaintiff, defendant

20  MCM conducted a subsequent investigation and determined Plaintiff's allegations of

21  fraud were substantiated. Larsen Decl., ¶ 21.

22         On October 7, 2019, defendant MCM notified Plaintiff through a letter that

23  defendant MCM decided to close the Rojo account and would "take the appropriate

24  steps to dismiss the lawsuit and/or vacate or release the judgment." Id., Ex. 13;

25  Plaintiff Decl., ¶ 24, Ex. I. The letter further stated that if data related to the Rojo

26  account was still being furnished to the consumer reporting agencies, defendant MCM

27  would request credit reporting agencies to "delete the Midland Funding, LLC trade

28  line related to" the Rojo account. Id.

1    On or about October 8, 2019, defendant MCM sent Plaintiff a check, which

2  was made payable to "David Rojo," in the amount of $317.64.[3]  Larsen Decl., ¶ 22,

3  Ex. 14; Plaintiff Decl., ¶ 25, Ex. J.

4    On November 4, 2020, defendant MCM sent a check via United Parcel Service

5  overnight to Defendants' counsel.  Frampton Suppl. Decl., ¶ 4, Exs. 1, 2.  The check

6  was dated October 29, 2020 and made payable to Plaintiff for $488 to reimburse

7  Plaintiff for the $329.64 levied from his account, the $100 fee Plaintiff's bank charged

8  and kept for processing the levy, and the interest on these amounts.  Id.  Defendants'

9  counsel did not send the check to Plaintiff's counsel for another three months.  Id.,

10 ¶ 5.

11    In February 2021,[4] Plaintiff ultimately received the October 29, 2020 check.

12 Id., ¶¶ 4, 6, Exs. 1, 3; Goldstein Decl., ¶ 17.

## V.

## DISCUSSION

## A.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
## SOME OF PLAINTIFF'S FDCPA CLAIMS

### 1.    Applicable Law

18    "[T]he FDCPA prohibits debt collectors 'from making false or misleading

19 representations and from engaging in various abusive and unfair practices.'"

20 Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir. 2010) (citing Heintz v.

21 Jenkins, 514 U.S. 291, 292 (1995)); see also 15 U.S.C. § 1692(e).  The FDCPA is a

22 strict liability statute that "makes debt collectors liable for violations that are not

---

[3]    It is unclear why the check was made for $12 less than the amount levied from Plaintiff's account, and neither party provides admissible evidence on this issue.  See Larsen Decl. ¶ 22; Goldstein Decl., ¶ 16.

[4]    The parties dispute when Plaintiff received the check.  Plaintiff's counsel states he received the check reimbursing Plaintiff on February 24, 2021.  Goldstein Decl., ¶ 17.  Defendants' counsel states it was hand delivered by courier to Plaintiff's counsel's office on February 23, 2021 and attached to his declaration an email purporting to show the check was delivered to Plaintiff's counsel's office on February 23, 2021.  Frampton Suppl. Decl., ¶ 6, Ex. 3.  For purposes of this order, the difference in dates is not material.

1    knowing or intentional." <u>Reichert v. Nat'l Credit Sys., Inc.</u>, 531 F.3d 1002, 1005 (9th

2    Cir. 2008).  "In order for a plaintiff to recover under the FDCPA, there are three

3    threshold requirements: (1) the plaintiff must be a 'consumer'; (2) the defendant must

4    be a 'debt collector'; and (3) the defendant must have committed some act or

5    omission in violation of the FDCPA." <u>Robinson v. Managed Accts. Receivables</u>

6    <u>Corp.</u>, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009).  "Generally, whether a defendant

7    has violated the FDCPA is a question of fact to be resolved by the jury." <u>Voris v.</u>

8    <u>Resurgent Cap. Servs., L.P.</u>, 494 F. Supp. 2d 1156, 1163 (S.D. Cal. 2007) (citing

9    <u>United States v. ACB Sales & Serv., Inc.</u>, 590 F. Supp. 561, 570 (D. Ariz. 1984)).

10         **2.**    **Analysis**

11         Here, it is undisputed (1) Plaintiff is a "consumer" and (2) defendant MCM is a

12    "debt collector" under the FDCPA. <u>See</u> dkts. 40-1, 49, 50.  The parties, however,

13    contest whether (1) defendants Midland Funding and Encore are debt collectors and

14    (2) Defendants are liable under sections 1692d, 1692e, 1692f, and 1692g of the

15    FDCPA. <u>Id.</u>

16              **a.**    **Defendant Encore is Entitled to Summary Judgment on**

17                    **Plaintiff's FDCPA Claims, but a Genuine Issue of Material**

18                    **Fact Remains as to Whether Defendant Midland Funding is**

19                    **a Debt Collector**

20               **i.**    **Relevant Law**

21         "To be held directly liable for violation of the FDCPA, a defendant must—as a

22    threshold requirement—fall within the Act's definition of 'debt collector.'" <u>Izenberg</u>

23    <u>v. ETS Servs., LLC</u>, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008) (citing <u>Heintz</u>, 514

24    U.S. at 294).  The FDCPA defines the phrase "debt collector" to include: (1) "any

25    person who uses any instrumentality of interstate commerce or the mails in any

26    business the principal purpose of which is the collection of any debts," or (2) any

27    person "who regularly collects or attempts to collect, directly or indirectly, debts owed

28    or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  Critical to this

1  definition "is the notion that a debt collector is one who directly or indirectly engages

2  in collection activity." Gold v. Midland Credit Mgmt., Inc., 82 F. Supp. 3d 1064, 1070

3  (N.D. Cal. 2015).

4      The statute excludes from its scope "any person collecting or attempting to

5  collect any debt owed or due or asserted to be owed or due another to the extent such

6  activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow

7  arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a

8  debt which was not in default at the time it was obtained by such person; or (iv)

9  concerns a debt obtained by such person as a secured party in a commercial credit

10  transaction involving the creditor." 15 U.S.C. § 1692a(6)(F). "Citing this provision,

11  courts have concluded that mortgage lenders and servicers are not 'debt collectors'

12  covered by the statute so long as they took assignment of an interest in the loan prior

13  to default by the debtor." Babadjanian v. Deutsche Bank Nat'l Tr. Co., No. CV 10-

14  02580-MMM (RZx), 2010 WL 11549885, at *4 (C.D. Cal. July 19, 2010).

15                  **ii.    Application**

16      Here, Defendants argue Plaintiff failed to allege defendant Midland Funding

17  was a debt collector as defined by the FDCPA in the Complaint and there is no

18  evidence to support a finding that defendant Midland Funding was a debt collector.

19  Dkt. 40-1 at 21. Defendants also argue passive debt buyers or entities that have no

20  interaction with debtors like defendants Midland Funding and Encore are not debt

21  collectors within the meaning of the FDCPA. Id. at 22.

22              ***(a)    Defendant Midland Funding***

23      With respect to defendant Midland Funding, the Complaint contains sufficient

24  factual allegations to establish defendant Midland Funding collects debts by, at the

25  very least, filing debt collection actions in state court. Dkt. 1 at 3. Specifically, the

26  Complaint alleges defendant Midland Funding filed a lawsuit against "David Rojo" in

27  Orange County Superior Court in case no. 30-2010-00391607 to collect debt incurred

28  on the Rojo account. Id.; see also Heintz, 514 U.S. at 297 (holding that litigation to

1  collect a debt is collection activity under the FDCPA).  The Complaint also alleges

2  defendant Midland Funding caused Plaintiff's bank account to be levied after the

3  lawsuit resulted in a default judgment.  Dkt. 1 at 4-5; <u>see also</u> <u>Molloy v. Primus Auto.</u>

4  <u>Fin. Servs.</u>, 247 B.R. 804, 821 (C.D. Cal. 2000) (holding a plaintiff sufficiently alleged

5  the defendant was a "debt collector" subject to the provisions of the FDCPA by

6  alleging the defendant was "in the business of . . . collecting monies").

7        In addition, the undisputed evidence supports a finding that defendant Midland

8  Funding directly engaged in collection activity by filing the collection lawsuit against

9  "David Rojo" in Orange County Superior Court.  Larsen Decl., ¶ 12, Ex. 4; <u>see also</u>

10  <u>Heintz</u>, 514 U.S. at 297.  In fact, defendant Midland Funding's corporate

11  representative testified at his deposition that defendant Midland Funding files debt

12  collection actions and collects consumer debt:

13        Q. Midland Funding was the named plaintiff in the collection lawsuit,

14        correct?

15        A. That's correct.

16        Q. And Midland Funding is the named plaintiff in other collection

17        lawsuits. Do you agree?

18        MR. FRAMPTON: Objection, outside the scope, irrelevant, vague.

19        THE WITNESS: Yes, I -- Midland Funding is named as the plaintiff in

20        other collection lawsuits for consumer debt, yes. . . .

21        Q. Would you agree that Midland Funding was the named plaintiff in the

22        writ of garnishment issued to U.S. Bank in the David Rojo case?

23        A. Yes, I believe so.

24        Q. Would you agree that the issuance of a writ of garnishment is an

25        attempt to collect a debt?

26        MR. FRAMPTON: Objection, vague.

27        THE WITNESS: Yes.

28  Goldstein Decl., ¶ 10, Ex. N.

However, if defendant Midland Funding purchased the Rojo account and acquired an interest in the debt owed on that account prior to default by "David Rojo," defendant Midland Funding may not be a "debt collector" covered by the FDCPA.  See Babadjanian, 2010 WL 11549885, at *4 (finding servicers are not "debt collectors" covered by the FDCPA if they take assignment of an interest in the loan prior to default by the debtor).  On the other hand, if defendant Midland Funding acquired an interest in the debt after it was in default, defendant Midland Funding is considered a "debt collector" under the FDCPA.  See id. at *5.  The evidence before the Court shows "David Rojo" had a balance of $5,863.11 on his May 11, 2007 credit card statement, but this alone is insufficient to determine whether "David Rojo" was in default.  Larsen Decl., ¶ 7, Ex. 2.  The Court does not have the underlying contract governing the Rojo account.  See De Dios v. Int'l Realty & Invs., 641 F.3d 1071, 1074 (9th Cir. 2011) ("Although the Act does not define 'in default,' courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue.").  A genuine issue of material fact, therefore, remains as to whether defendant Midland Funding acquired an interest in the debt on the Rojo account prior to default by "David Rojo."

Thus, a genuine issue of material fact exists as to whether defendant Midland Funding is a "debt collector" under the FDCPA.  The Court, therefore, DENIES Defendants' Motion regarding the threshold issue of whether defendant Midland Funding is a "debt collector" under the FDCPA.

### (b)   Defendant Encore

With respect to defendant Encore, based on the undisputed evidence, a reasonable trier of fact could not find defendant Encore is a debt collector under the FDCPA.  The undisputed evidence merely shows defendant Encore owns defendants Midland Funding and MCM.  Larsen Decl., ¶ 5.  Plaintiff has not presented any admissible evidence to show defendant Encore (1) "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

1  collection of any debts," or (2) "regularly collects or attempts to collect, directly or

2  indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. §

3  1692a(6); <u>see also</u> <u>LaCourte v. JP Morgan Chase & Co.</u>, No. 12 CIV. 9453 JSR, 2013

4  WL 4830935, at *4 (S.D.N.Y. Sept. 4, 2013) (finding "[plaintiff] is correct that

5  corporate parents have been held to be "debt collectors" under the FDCPA but

6  declining to find "corporate parenthood alone" is a basis to be a "debt collector"

7  under the FDCPA).

8  　　Plaintiff seeks to use paragraphs from defendant Encore's SEC 10-K filing as

9  set forth in Plaintiff's counsel's declaration to support his claim that defendant Encore

10  is a debt collector under the FDCPA.[5]  Dkt. 49 at 24, 26.  However, Plaintiff's counsel

11  does not possess personal knowledge of the SEC 10-K filing.  <u>See</u> <u>Hal Roach Studios</u>

12  <u>Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1551 (9th Cir. 1989) ("A document

13  which lacks a proper foundation to authenticate it cannot be used to support a motion

14  for summary judgment."); <u>Zoslaw v. MCA Distrib. Corp.</u>, 693 F.2d 870, 883 (9th Cir.

15  1982) (stating Federal Rule of Civil Procedure 56 requires that documentary materials

16  need authentication through affidavits or declarations from individuals with personal

17  knowledge of the documentary materials).  Hence, the information from defendant

18  Encore's SEC 10-K filing lacks proper foundation and is, therefore, not admissible.

19  　　Thus, Defendants have satisfied their burden to show there is no genuine issue

20  of material fact and defendant Encore is not a debt collector under the FDCPA.

21  Therefore, with respect to defendant Encore, the Court GRANTS Defendants'

22  Motion as to Plaintiff's first cause of action.

23  ///

24  ///

25  ///

26

27  ────────────────

   [5]　　Defendant Encore objects to this portion of Plaintiff's counsel's declaration on

28  grounds it is not "best evidence," is an "improper opinion and legal argument," and

   "lacks foundation."  Dkt. 50-1 at 13.

1       **b.**     **Defendants Midland Funding and MCM Are Not Entitled to**

2               **Summary Judgment on Plaintiff's Claim under Section 1692d**

3               **of the FDCPA**

4            **i.**     **Relevant Law**

5       Under section 1692d of the FDCPA, a "debt collector may not engage in any

6 conduct the natural consequence of which is to harass, oppress, or abuse any person

7 in connection with the collection of a debt." 15 U.S.C. § 1692d.  In addition to this

8 general prohibition, the statute provides a non-exhaustive list of specific prohibited

9 conduct.  15 U.S.C. § 1692d(1)-(6).  This includes:

10      (1) The use or threat of use of violence or other criminal means to harm

11      the physical person, reputation, or property of any person.

12      (2) The use of obscene or profane language or language the natural

13      consequence of which is to abuse the hearer or reader.

14      (3) The publication of a list of consumers who allegedly refuse to pay

15      debts, except to a consumer reporting agency or to persons meeting the

16      requirements of section 1681a(f) or 1681b(3) of this title.

17      (4) The advertisement for sale of any debt to coerce payment of the

18      debt.

19      (5) Causing a telephone to ring or engaging any person in telephone

20      conversation repeatedly or continuously with intent to annoy, abuse, or

21      harass any person at the called number.

22      (6) Except as provided in section 1692b of this title, the placement of

23      telephone calls without meaningful disclosure of the caller's identity.

24 Id.

25       The principle governing the Ninth Circuit's evaluation of claims under section

26 1692d of the FDCPA is set forth in Swanson v. S. Or. Credit Serv., Inc., 869 F.2d

27 1222, 1225 (9th Cir. 1988): "If the least sophisticated debtor would 'likely be misled'

28 by a communication from a debt collector, the debt collector has violated the Act."

1   <u>Guerrero v. RJM Acquisitions LLC</u>, 499 F.3d 926, 934 (9th Cir. 2007).[6]  "[T]he least

2   sophisticated debtor is reasonable and functional, but lacks experience and education

3   regarding financial matters."  <u>Stimpson v. Midland Credit Mgmt., Inc.</u>, 944 F.3d 1190,

4   1196 (9th Cir. 2019).  "Ordinarily, whether conduct harasses, oppresses, or abuses will

5   be a question for the jury."  <u>Meadows v. Franklin Collection Serv., Inc.</u>, 414 F. App'x

6   230, 233 (11th Cir. 2011).

7                                      **ii.    Application**

8          Defendants appear to argue Plaintiff has not alleged any facts showing

9   defendants Midland Funding and MCM engaged in any of the conduct described in

10  15 U.S.C. § 1692d(1)-(6).  Dkt. 40-1 at 15-16.

11         Prohibited conduct under section 1692d is not limited to the list in section

12  1692d.  <u>See</u> 15 U.S.C. § 1692d; <u>Penny v. Williams & Fudge, Inc.</u>, 840 F. Supp. 2d

13  1314, 1320 (M.D. Fla. 2012) (finding section 1692d contains a "catch all provision"

14  that "was purposely broadly drawn" and noting from the legislative history, "the bill

15  prohibits in general terms any harassing, unfair, or deceptive collection practice"

16  (quoting S.Rep. No. 95–832S.Rep. No. 95–832, 95th Cong., 1st Sess., reprinted in

17  1977 U.S. Code Cong. & Ad. News 1695, 1698)).  Further, Plaintiff has introduced

18  evidence upon which a factfinder could reasonably conclude that defendants Midland

19  Funding and MCM's conduct would have objectively harassed or oppressed a

20  consumer of below average sophistication or intelligence.  For example, in a

21  September 3, 2019 letter, defendant MCM stated it was "ceasing all collection efforts

22  until [the] conclusion of the investigation of [Plaintiff's] dispute," Larsen Decl., ¶ 20,

23  Ex. 12; however, later that month, defendant MCM sent Plaintiff an

24  "Acknowledgement of Satisfaction of Judgment" without returning the funds levied

25  from Plaintiff's bank account, suggesting Plaintiff was nonetheless responsible for the

26

27  ─────────────────────
    [6]     This principle also governs sections 1692e, 1692f, and 1692g of the FDCPA.
28  <u>Guerrero</u>, 499 F.3d at 934; <u>Swanson</u>, 860 F.2d at 1225; <u>see also</u> <u>Donohue</u>, 592 F.3d at
    1030.

debt charged on the Rojo account and Defendants were not going to return the funds

levied from his bank account, Plaintiff Decl., ¶ 23, Ex. H.  Such contradictory

messages may have harassed a consumer of below average sophistication or

intelligence.  Cf. Johnson v. Portfolio Recovery Assocs., LLC, No. CV 12-4261 PSG,

2013 WL 10156241, at *7 (C.D. Cal. June 24, 2013) ("[A] debt collector may harass a

debtor by continuing to call the debtor after the debtor has requested that the debt

collector cease and desist communication.").  Furthermore, although Defendants

explicitly acknowledged Plaintiff's dispute was meritorious on October 7, 2019,

Defendants did not reimburse Plaintiff for the full amount levied from his account

until more than a year later in February 2021.  Larsen Decl., ¶ 21, Ex. 13; Plaintiff

Decl., ¶ 24, Ex. I; Frampton Suppl. Decl., ¶ 6, Ex. 3; Goldstein Decl., ¶ 17; see also

Nelson v. Equifax Info. Servs., LLC, 522 F. Supp. 2d 1222, 1232-33 (C.D. Cal. 2007)

(denying defendant's motion for summary judgment as to plaintiff's section 1692d

claim and finding section 1692d's "catch all" provision allows conduct, not specifically

listed in the statute, to constitute harassing, oppressive or abusive conduct in violation

of the statute).

Defendants also argue defendants Midland Funding and MCM are not liable

under section 1692d because they did not intend to collect from Plaintiff, but rather

from "David Rojo."  Dkt. 40-1 at 16.  Defendants Midland Funding and MCM,

however, clearly intended to collect from the person with Plaintiff's social security

number, i.e. Plaintiff.  Further, regardless of defendants Midland Funding and MCM's

intentions, the FDCPA is a strict liability statute that "makes debt collectors liable for

violations that are not knowing or intentional."  Reichert, 531 F.3d at 1005.

Thus, a genuine issue of material fact exists as to whether defendants Midland

Funding and MCM engaged in "any conduct the natural consequence of which is to

harass, oppress, or abuse any person in connection with the collection of a debt."  15

U.S.C. § 1692d.  Therefore, with respect to defendants Midland Funding and MCM,

1  the Court DENIES Defendants' Motion as to Plaintiff's first cause of action under

2  section 1692d.

3         c.   **Defendants Midland Funding and MCM Are Not Entitled to**

4              **Summary Judgment on Plaintiff's Claim under Section 1692e**

5              **of the FDCPA**

6              i.   **Relevant Law**

7         Section 1692e of the FDCPA prohibits a debt collector's use of "any false,

8  deceptive, or misleading representation or means in connection with the collection of

9  any debt." 15 U.S.C. § 1692e.  The section also provides "a non-exhaustive list of

10  sixteen practices that violate this general prohibition[.]"[7]  Tourgeman v. Collins Fin.

11

12  _____

[7] The following sixteen practices constitute violations of section 1962e of the
13  FDCPA:

14         (1) The false representation or implication that the debt collector is
            vouched for, bonded by, or affiliated with the United States or any State,
            including the use of any badge, uniform, or facsimile thereof.
15
            (2) The false representation of--
16
                 (A) the character, amount, or legal status of any debt; or
17
                 (B) any services rendered or compensation which may be lawfully
                 received by any debt collector for the collection of a debt.
18
            (3) The false representation or implication that any individual is an
19          attorney or that any communication is from an attorney.

20          (4) The representation or implication that nonpayment of any debt will
            result in the arrest or imprisonment of any person or the seizure,
            garnishment, attachment, or sale of any property or wages of any person
21          unless such action is lawful and the debt collector or creditor intends to
            take such action.
22
            (5) The threat to take any action that cannot legally be taken or that is
            not intended to be taken.
23
            (6) The false representation or implication that a sale, referral, or other
24          transfer of any interest in a debt shall cause the consumer to--

25               (A) lose any claim or defense to payment of the debt; or

                 (B) become subject to any practice prohibited by this subchapter.
26
            (7) The false representation or implication that the consumer committed
            any crime or other conduct in order to disgrace the consumer.
27
            (8) Communicating or threatening to communicate to any person credit
28          information which is known or which should be known to be false,
            including the failure to communicate that a disputed debt is disputed.

1   Servs., Inc., 755 F.3d 1109, 1119 (9th Cir. 2014).  In the Ninth Circuit, a debt

2   collector's liability under section 1692e is an issue of law.  Gonzales v. Arrow Fin.

3   Servs., LLC, 660 F.3d 1055, 1061 (9th Cir. 2011) (citing Terran v. Kaplan, 109 F.3d

4   1428, 1432 (9th Cir. 1997)).

5        As mentioned above, the principle governing the Ninth Circuit's evaluation of

6   section 1692e of the FCDPA is set forth in Swanson, 869 F.2d at 1225: "If the least

7   sophisticated debtor would 'likely be misled' by a communication from a debt

8   collector, the debt collector has violated the Act."  Guerrero, 499 F.3d at 934 (stating

9   this standard applies to section 1692e of the FDCPA).  "[T]he least sophisticated

10   debtor is reasonable and functional, but lacks experience and education regarding

11   financial matters." Stimpson, 944 F.3d at 1196.

12

---

13   (9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

14

15

16   (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

17   (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

18

19

20

21

22   (12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

23   (13) The false representation or implication that documents are legal process.

24   (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

25   (15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

26

27   (16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

28   15 U.S.C. § 1692e.

1        A false or misleading statement, however, is actionable under section 1692e

2   only if it is material.  Donohue, 592 F.3d at 1033.  While materiality does not appear

3   in the text of the FDCPA, the Ninth Circuit has reasoned "that false but non-material

4   representations are not likely to mislead the least sophisticated consumer[.]"  Id.  In

5   examining materiality, a court should look for "genuinely misleading statements that

6   may frustrate a consumer's ability to intelligently choose his or her response," rather

7   than "mere technical falsehoods."  Id. at 1034.

8              **ii.**     **Application**

9        Defendants argue Plaintiff has not set forth sufficient facts to allege a section

10   1692e claim and Plaintiff's section 1692e claim is based on the faulty premise that

11   attempting to collect a debt that the consumer does not owe can be false, misleading,

12   or deceptive.  Dkt. 40-1 at 17.

13        The undisputed evidence establishes defendant MCM sent contradictory

14   communications regarding its collection efforts.  As mentioned above, even though

15   defendant MCM had informed Plaintiff that defendant MCM was "ceasing all

16   collection efforts until [the] conclusion of the investigation of [Plaintiff's] dispute,"

17   Larsen Decl., ¶ 20, Ex. 12, defendant MCM later sent Plaintiff a letter with an

18   "Acknowledgement of Satisfaction of Judgment," suggesting defendant MCM was

19   not going to return the funds levied from Plaintiff's bank account, Plaintiff Decl.,

20   ¶ 23, Ex. H.  Applying the least sophisticated debtor standard, a reasonable trier of

21   fact could find the contradictory messages in these communications false, misleading,

22   and even threatening to continue unlawfully withholding the levied funds.  See

23   Gonzales, 660 F.3d at 1062 (rejecting defendant's arguments that the letters do not

24   violate the FDCPA and holding that "under the least sophisticated debtor standard,

25   the letters are misleading and impliedly threaten to take action that cannot be legally

26   taken").

27        Moreover, the undisputed evidence establishes defendants MCM and Midland

28   Funding sent documents, including the May 9, 2018 "Memorandum of Costs after

1  Judgment, Acknowledgment of Credit and Declaration of Accrued Interest" to

2  "David Rojo" at the address where Plaintiff resided in Chino Hills, California, Larsen

3  Decl., ¶ 14, Ex. 6, even before Plaintiff first called Defendants on July 18, 2019, id., ¶

4  16.  Applying the least sophisticated debtor standard, a reasonable trier of fact could

5  find receiving a letter from a debt collector addressed to "David Rojo" would be

6  misleading because it suggests Plaintiff is responsible for the debt on the Rojo

7  account.  See Tourgeman v. Collins Fin. Servs., Inc., No. 08-CV-1392 JLS NLS, 2011

8  WL 3176453, at *6 (S.D. Cal. July 26, 2011) ("[T]he Court can conceive of nary a

9  situation more confusing than receiving a dunning letter identifying an original

10  creditor to whom the consumer never was indebted.").

11      Thus, because a reasonable factfinder could find the correspondence from

12  defendants Midland Funding and MCM misleading and material under the least

13  sophisticated consumer standard, defendants Midland Funding and MCM have not

14  satisfied their burden to show there is no genuine issue of material fact regarding the

15  alleged violation of section 1692e.  Therefore, with respect to defendants Midland

16  Funding and MCM, the Court DENIES Defendants' Motion as to Plaintiff's first

17  cause of action under section 1692e.

18      **d.   Defendants Midland Funding and MCM Are Entitled to**

19         **Summary Judgment on Section 1692f of the FDCPA**

20              **i.   Relevant Law**

21      Section 1692f of the FDCPA maintains that "[a] debt collector may not use

22  unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C.

23  § 1692f.  This section lists eight non-exhaustive examples of conduct that violates this

24  section.[8]  Id.

25

26  [8] The following practices constitute violations of section 1692f of the FDCPA:

27      (1) The collection of any amount (including any interest, fee, charge, or
       expense incidental to the principal obligation) unless such amount is
28      expressly authorized by the agreement creating the debt or permitted by
       law.

1   "The Ninth Circuit has not articulated a standard for identifying 'unfair or

2   unconscionable' conduct outside of the eight examples listed in the statute."

3   Cunningham v. Meridian Credit Grp., LLC, No. EDCV 18-1889-JGB (SHKx), 2019

4   WL 643966, at *4 (C.D. Cal. Feb. 11, 2019).  District courts in the Ninth Circuit,

5   however, have held that, when the conduct alleged is not "remotely similar" to the

6   enumerated examples, the conduct is not "unfair or unreasonable" within the

7   meaning of section 1692f.  Id.  Other courts have noted the plain meaning of "unfair"

8   is "marked by injustice, partiality, or deception" and the term "unconscionable"

9   means "having no conscience"; "unscrupulous"; "showing no regard for conscience";

10

11   _____

12   (2) The acceptance by a debt collector from any person of a check or
    other payment instrument postdated by more than five days unless such
13   person is notified in writing of the debt collector's intent to deposit such
    check or instrument not more than ten nor less than three business days
14   prior to such deposit.

15   (3) The solicitation by a debt collector of any postdated check or other
    postdated payment instrument for the purpose of threatening or
    instituting criminal prosecution.
16
    (4) Depositing or threatening to deposit any postdated check or other
17   postdated payment instrument prior to the date on such check or
    instrument.
18
    (5) Causing charges to be made to any person for communications by
19   concealment of the true purpose of the communication. Such charges
    include, but are not limited to, collect telephone calls and telegram fees.
20
    (6) Taking or threatening to take any nonjudicial action to effect
    dispossession or disablement of property if--
21
        (A) there is no present right to possession of the property claimed
22       as collateral through an enforceable security interest;

23       (B) there is no present intention to take possession of the
         property; or
24
         (C) the property is exempt by law from such dispossession or
25       disablement.

    (7) Communicating with a consumer regarding a debt by post card.
26
    (8) Using any language or symbol, other than the debt collector's
27   address, on any envelope when communicating with a consumer by use
    of the mails or by telegram, except that a debt collector may use his
    business name if such name does not indicate that he is in the debt
    collection business.
28
    15 U.S.C. § 1692f.

1   and "affronting the sense of justice, decency, or reasonableness."  See LeBlanc v.

2   Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir. 2010).

3          As mentioned above, the principle governing the Ninth Circuit's evaluation of

4   claims under section 1692f of the Act is the same standard set forth in Swanson, 869

5   F.2d at 1225: "If the least sophisticated debtor would 'likely be misled' by a

6   communication from a debt collector, the debt collector has violated the Act."

7   Guerrero, 499 F.3d at 934 (stating this standard applies to section 1692f of the

8   FDCPA).  "[T]he least sophisticated debtor is reasonable and functional, but lacks

9   experience and education regarding financial matters."  Stimpson, 944 F.3d at 1196.

10                         ii.     Application

11         Here, the conduct Plaintiff alleges is "unfair or unconscionable" does not

12   violate section 1692f.  Plaintiff claims defendants Midland Funding and MCM's

13   conduct constitutes unfair and unconscionable means to collect debt because (1)

14   defendants Midland Funding and MCM obtained and used a default judgment against

15   another person with a different name and address to levy Plaintiff's bank account and

16   (2) even though Plaintiff repeatedly disputed he was "David Rojo" and provided the

17   requested documentation, defendants MCM and Midland Funding failed to return the

18   money they had garnished or reimburse Plaintiff for bank charges in a timely fashion.

19   Dkt. 49 at 19.  Plaintiff, however, has not cited any valid authority—and the Court has

20   found none—which applies section 1692f to facts like those alleged herein.

21         Moreover, the fact that defendants MCM and Midland Funding issued a writ of

22   garnishment on Plaintiff's bank does not give rise to a section 1692f violation where

23   the evidence does not suggest they knew or should have known at the time that

24   Plaintiff's identity had been stolen.  See Chenault v. Credit Corp Sols., Inc., No. CV

25   16-5864, 2017 WL 5971727, at *3 (E.D. Pa. Dec. 1, 2017) ("The FDCPA was

26   intended to protect debtors from offensive, misleading, and aggressive tactics by debt

27   collectors, not to hold debt collectors . . . to a standard of omniscience as to whether

28   or not a debt will eventually be found to belong rightfully to someone other than the

individual first identified as the debtor." (citations and internal quotation marks omitted)).  Further, although a genuine issue of material fact remains as to whether defendants Midland Funding and MCM violated section 1692d of the FDCPA, the undisputed evidence establishes defendants Midland Funding and MCM investigated Plaintiff's dispute and ultimately reimbursed him for the funds taken from his bank account.  Therefore, no evidence suggests defendants Midland Funding and MCM's conduct was "unscrupulous"; "showing no regard for conscience"; or "affronting the sense of justice, decency, or reasonableness." LeBlanc, 601 F.3d at 1200.  Ultimately, no reasonable factfinder could find defendants Midland Funding and MCM's conduct rose to the level of unfair or unconscionable as contemplated by section 1692f. See Johnson, 2013 WL 10156241, at *10-11 (finding "that the FDCPA provides . . . examples of violations of § 1692f that are in no way similar to the conduct proscribed in §§ 1692d and 1692e" and that while a triable issue of fact remained as to the plaintiff's claims under section 1692d(5) for voluminous and harassing phone calls, the same alleged conduct did not form a basis for plaintiff's claims under 1692f.

Thus, based on the undisputed material facts, defendants Midland Funding and MCM are entitled to summary judgment on Plaintiff's claim under 1692f.  Therefore, with respect to defendants Midland Funding and MCM, the Court GRANTS Defendants' Motion as to Plaintiff's first cause of action under section 1692f.

### e. Defendants Midland Funding and MCM Are Entitled to Summary Judgment on Section 1692g under the FDCPA

#### i. Relevant Law

Section 1692g of the FDCPA provides:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

1    (1) the amount of the debt;

2    (2) the name of the creditor to whom the debt is owed;

3    (3) a statement that unless the consumer, within thirty days after

4    receipt of the notice, disputes the validity of the debt, or any portion

5    thereof, the debt will be assumed to be valid by the debt collector;

6    (4) a statement that if the consumer notifies the debt collector in

7    writing within the thirty-day period that the debt, or any portion

8    thereof, is disputed, the debt collector will obtain verification of the

9    debt or a copy of a judgment against the consumer and a copy of

10   such verification or judgment will be mailed to the consumer by the

11   debt collector; and

12   (5) a statement that, upon the consumer's written request within the

13   thirty-day period, the debt collector will provide the consumer with

14   the name and address of the original creditor, if different from the

15   current creditor.

16   15 U.S.C. § 1692g.  This written notice is referred to as a "validation notice."  See

17   Riggs v. Prober & Raphael, 681 F.3d 1097, 1099 (9th Cir. 2012).  The purpose of

18   section 1692g's notice requirement is "specifically to ensure that debt collectors g[i]ve

19   consumers adequate information concerning their legal rights."  Swanson, 869 F.2d at

20   1225.

21   Section 1692g(b) of the FDCPA further provides, "Any collection activities and

22   communication during the 30-day period may not overshadow or be inconsistent with

23   the disclosure of the consumer's right to dispute the debt or request the name and

24   address of the original creditor."  15 U.S.C. § 1692g(b); see also Terran, 109 F.3d at

25   1432 ("'[The validation notice] must not be overshadowed or contradicted by other

26   messages or notices appearing in the initial communication from the collection

27   agency.'"(citation and internal quotation marks omitted)).  "[W]hether language in a

28

1    collection letter overshadows or contradicts the validation notice so as to confuse a

2    least sophisticated debtor is a question of law." Terran, 109 F.3d at 1432.

3          Again, the principle governing the Ninth Circuit's evaluation of claims under

4    section 1692g of the FDCPA is set forth in Swanson: "if [the court] find[s] that the

5    least sophisticated debtor would likely be misled by the notice which [plaintiff]

6    received from [the credit service], we must hold that the credit service has violated the

7    Act." 869 F.2d at 1225-26 (reversing the district court's grant of a summary judgment

8    in favor of defendant and holding that the collection letter violates section 1692g

9    because it misleads a least sophisticated debtor in both form and content). "[T]he

10   least sophisticated debtor is reasonable and functional, but lacks experience and

11   education regarding financial matters." Stimpson, 944 F.3d at 1196.

**ii.    Application**

13         First, the undisputed evidence shows defendants Midland Funding and MCM

14   followed the requirements of section 1692g.  Assuming the "initial communication"

15   for purposes of section 1692g was Plaintiff's July 18, 2019 phone call to Defendants,

16   Larsen Decl., ¶ 16, defendant MCM sent Plaintiff a timely written notice within five

17   days through defendant MCM's July 23, 2019 letter, id., ¶ 17, Ex. 9; Plaintiff Decl.,

18   ¶ 12, Ex. A.

19         Contrary to Plaintiff's arguments, dkt. 19 at 14, the letter also satisfied the

20   notice requirements pursuant to section 1692g(3)-(5).  The letter included

21   (1) statements that Plaintiff has "the right to request substantiation of the debt" and

22   defendant MCM was "treating [Plaintiff's] dispute as a request for substantiation";

23   (2) information regarding the Rojo account, including copies of billing statements and

24   the current balance; and (3) the name and address of the original creditor, HSBC

25   Bank, in the billing statements.  Larsen Decl., ¶ 17, Ex. 9; Plaintiff Decl., ¶ 12, Ex. A.

26   Because defendant MCM's letter already acknowledged Plaintiff had exercised his

27   right to dispute the debt, defendant MCM satisfied the requirement under section

28   1692g(a)(3).  Further, because defendant MCM's letter already provided verification of

26

1   the debt, defendant MCM satisfied the requirement under section 1692g(a)(4).

2   Finally, because defendant MCM's letter already provided Plaintiff the name and

3   address of the original creditor, defendant MCM satisfied the requirement under

4   section 1692g(a)(5).

5          Second, to the extent Plaintiff argues defendants Midland Funding and MCM

6   violated section 1692g(b), dkt. 49 at 20-21, their collection activities were consistent

7   with Plaintiff's right to dispute the debt within thirty days after Plaintiff's receipt of

8   defendant MCM's July 23, 2019 letter.  In fact, the undisputed evidence establishes

9   defendants Midland Funding and MCM did not engage in any collection efforts

10  during this thirty-day period.

11         Therefore, with respect to defendants Midland Funding and MCM, the Court

12  GRANTS Defendants' Motion as to Plaintiff's first cause of action under section

13  1692g.

14  **f.      Defendants Midland Funding and MCM Have Not Met**

15  **Their Burden in Showing They Are Entitled to the "Bona**

16  **Fide Error" Defense**

17         Defendants argue that even if defendants Midland Funding and MCM's

18  conduct constituted a violation of the FDCPA, defendants Midland Funding and

19  MCM "would still not be liable pursuant to the Bona Fide Error Defense."  Dkt. 40-1

20  at 24-27.

21  **i.      Relevant Law**

22         The "bona fide error" defense, codified in section 1692k(c) of the FDCPA

23  provides:

24         A debt collector may not be held liable in any action brought under this

25         subchapter if the debt collector shows by a preponderance of evidence

26         that the violation was not intentional and resulted from a bona fide error

27         notwithstanding the maintenance of procedures reasonably adapted to

28         avoid any such error.

27

1  15 U.S.C. § 1692k(c).

2      The "bona fide error" defense is an "affirmative defense" and "narrow

3  exception to strict liability under the FDCPA," for which defendants bear the burden

4  of proof on summary judgment.  Clark v. Cap. Credit & Collection Servs., Inc., 460

5  F.3d 1162, 1177 (9th Cir. 2006); Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507,

6  1514 (9th Cir. 1994).  Accordingly, defendants "must show that any alleged false or

7  misleading representations were (1) unintentional; (2) the result of bona fide error;

8  and (3) made despite the maintenance of procedures reasonably adapted to avoid any

9  such error."  Taylor v. Quall, 471 F. Supp. 2d 1053, 1057 (C.D. Cal. 2007) (citation

10  omitted).

11          **ii.    Application**

12      As stated above, a reasonable trier of fact could find defendants Midland

13  Funding and MCM violated sections of the FDCPA based upon the nature of their

14  communications with Plaintiff and the substantial delay in returning the funds levied

15  from Plaintiff's bank account.  Defendants Midland Funding and MCM, however,

16  have failed to show there is no genuine issue of material fact that any violation was

17  unintentional and resulted from a bona fide error notwithstanding the maintenance of

18  procedures reasonably adapted to avoid any such error.  For example, while

19  defendants Midland Funding and MCM have acknowledged they failed to reimburse

20  Plaintiff for more than a year, it remains in dispute whether the delay was intentional

21  and the result of bona fide error.  Moreover, while the alleged violations appeared to

22  have occurred in defendant Midland Funding and MCM's dispute investigation

23  process, defendant Midland Funding and MCM have not satisfied their burden in

24  showing they maintain dispute investigation procedures reasonably adapted to avoid

25  such violations.  Defendants Midland Funding and MCM submit defendant MCM's

26  Dispute Investigation Policy, but much of it is redacted and thus unavailable for the

27  Court's review.  See Larsen Decl., ¶ 16, Ex. 8; Parker v. Peters & Freedman, LLP, No.

28  8:17-CV-00667-JLS-DFM, 2018 WL 5904169, at *5 (C.D. Cal. Apr. 9, 2018) (finding

1    defendant has failed to raise a genuine issue that is entitled to the bona fide error

2    defense and none of the procedures constituted a policy "designed to avoid the

3    specific errors that led to [Defendant's] filing and maintenance of a time-barred

4    collection suit against [Plaintiff]" (alternations in original)).

5           Accordingly, defendants Midland Funding and MCM have not met their

6    burden of establishing the bona fide error defense to the FDCPA.

7           In summary, with respect to defendant Encore, the Court GRANTS

8    Defendants' Motion as to Plaintiff's first cause of action under sections 1692d, 1692e,

9    1692f, and 1692g of the FDCPA.  With respect to defendants Midland Funding and

10   MCM, the Court DENIES Defendants' Motion as to Plaintiff's first cause of action

11   under sections 1692d and 1692e of the FDCPA and GRANTS Defendants' Motion

12   as to Plaintiff's first cause of action under sections 1692f and 1692g of the FDCPA.

13   **B.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON**

14   **SOME OF PLAINTIFF'S ROSENTHAL ACT CLAIMS**

15          **1.    Applicable Law**

16          "California has adopted a state version of the FDCPA, called the Rosenthal

17   Act."  Riggs, 681 F.3d at 1100; see also Cal. Civ. Code §§ 1788-1788.33.  The

18   Rosenthal Act exists to "'prohibit debt collectors from engaging in unfair or

19   deceptive'" debt collection practices.  Davidson v. Seterus, Inc., 21 Cal. App. 5th 283,

20   295 (2018) (quoting Cal Civ Code § 1788.1(b)).  "The Rosenthal Act mimics or

21   incorporates by reference the FDCPA's requirements . . . and makes available the

22   FDCPA's remedies for violations.'"  Riggs, 681 F.3d at 1100.  The Rosenthal Act,

23   thus, establishes liability under California law for violations of the FDCPA.  De

24   Amaral v. Goldsmith & Hull, No. 12-CV-03580-WHO, 2014 WL 572268, at *7 (N.D.

25   Cal. Feb. 11, 2014) (citation omitted).

26   ///

27   ///

28   ///

1       **2.**      **Analysis**

2            **a.**      **Defendant Encore Is Entitled to Summary Judgment on**

3                       **Plaintiff's Claim under Section 1788.17 of the Rosenthal Act;**

4                       **Defendants Midland Funding and MCM Are Not Entitled to**

5                       **Summary Judgment on Plaintiff's Claim under Section**

6                       **1788.17 of the Rosenthal Act**

7                   **i.**      **Relevant Law**

8         Section 1788.17 of the Rosenthal Act incorporates provisions from the

9 FDCPA and provides that "every debt collector collecting or attempting to collect a

10 consumer debt shall comply with the provisions of Sections 1692b to 1692j" of the

11 FDCPA.  Cal. Civ. Code § 1788.17.  "[W]hether the [conduct] violates the Rosenthal

12 Act turns on whether it violates the FDCPA."  <u>Riggs</u>, 681 F.3d at 1100; <u>Mariscal v.</u>

13 <u>Flagstar Bank, FSB</u>, No. ED CV 19-2023-DMG (SHKx), 2020 WL 4804903, at *2

14 (C.D. Cal. Aug. 4, 2020) ("[V]iolations of the FDCPA's substantive provisions also

15 violate section 1788.17").

16                   **ii.**      **Application**

17                     ***(a)***     ***Defendant Encore***

18         As an initial matter, a genuine issue of material fact does not exist as to whether

19 defendant Encore is a debt collector under the Rosenthal Act.

20         "[T]he definition of 'debt collector' found in the [Rosenthal Act] is broader

21 than that contained in the FDCPA[.]"  <u>Izenberg v. ETS Servs., LLC</u>, 589 F. Supp. 2d

22 1193, 1199 (C.D. Cal. 2008).  "[T]he Rosenthal Act considers anyone who regularly

23 engages in the act or practice of collecting money, property or their equivalent that is

24 due or owing by a natural person as a result of a transaction between that person and

25 another person, in which the natural person acquired property, services, or money on

26 credit, primarily for personal, family, or household purposes to be a 'debt collector.'"

27 <u>Davidson</u>, 21 Cal. App. 5th at 303.  Under even the more expansive definition in the

28 Rosenthal Act, defendant Encore does not meet the definition of "debt collector"

1   under the FDCPA because the undisputed evidence does not show defendant Encore

2   engaged in "the act or practice of collecting money, property or their equivalent" in an

3   attempt to obtain repayment of debt on the Rojo account.  See id.

4       Because Defendants demonstrate an absence of a genuine issue of material fact

5   as to whether defendant Encore is a "debt collector" under the FDCPA, there is no

6   genuine issue of material fact as to whether defendant Encore violated section

7   1788.17 of the Rosenthal Act.  Therefore, with respect to defendant Encore, the

8   Court GRANTS Defendants' Motion as to Plaintiff's second cause of action under

9   section 1178.17 of the Rosenthal Act.

10       ***(b)***    ***Defendants Midland Funding and MCM***

11       On the other hand, as the Court finds defendants Midland Funding and MCM

12   have not met their burden in proving they are entitled to summary judgment under

13   sections 1692d and 1692e of the FDCPA, defendants Midland Funding and MCM

14   have also failed to meet their burden in proving they are entitled to summary

15   judgment under section 1788.17 of the Rosenthal Act.  See Hosseinzadeh v. M.R.S.

16   Associates, Inc., 387 F. Supp. 2d 1104, 1118 (C.D. Cal. 2005) ("Because defendant has

17   violated the FDCPA for the reasons stated herein, the Court concludes that defendant

18   has also violated Cal. Civ. Code § 1788.17.").

19       Therefore, with respect to defendants Midland Funding and MCM, the Court

20   DENIES Defendants' Motion as to Plaintiff's second cause of action under section

21   1788.17 of the Rosenthal Act.

22       **b.**    **Defendants Are Entitled to Summary Judgment on**

23           **Plaintiff's Claims under Sections 1788.10(f), 1788.13(j), and**

24           **1788.15(a) of the Rosenthal Act**

25           **i.**    **Relevant Law**

26       Section 1788.10(f) of the Rosenthal Act prohibits debt collectors from

27   collecting or attempting to collect a consumer debt by threats to take any prohibited

28   actions.  Cal. Civ. Code § 1788.10(f).  Section 1788.13(j) of the Rosenthal Act

1  prohibits debt collectors from collecting or attempting to collect a consumer debt

2  through "false representation that a legal proceeding has been, is about to be, or will

3  be instituted unless payment of a consumer debt is made."  Cal. Civ. Code

4  § 1788.13(j).  Section 1788.15(a) of the Rosenthal Act prohibits debt collectors from

5  collecting or attempting to collect a consumer debt "by means of judicial proceedings

6  when the debt collector knows that the service of process, where essential to

7  jurisdiction over the debtor or his property, has not been legally effected."  Cal. Civ.

8  Code § 1788.15(a).

9              **ii.    Application**

10      As stated above, there is no genuine issue of material fact and the undisputed

11  evidence establishes defendant Encore is not a "debt collector" under the Rosenthal

12  Act.  Without satisfying this threshold inquiry, defendant Encore is entitled to

13  summary judgment on Plaintiff's claims under sections 1788.10(f), 1788.13(j), and

14  1788.15(a) of the Rosenthal Act.

15      In addition, the undisputed evidence establishes defendants Midland Funding

16  and MCM did not violate sections 1788.10(f), 1788.13(j), and 1788.15(a) of the

17  Rosenthal Act.  Plaintiff appears to claim that because defendants Midland Funding

18  and MCM (1) obtained a default judgment against "David Rojo" and later used the

19  default judgment to levy Plaintiff's bank account, (2) delayed in reimbursing Plaintiff,

20  and (3) "sent correspondence to Plaintiff asserting he was responsible for the debt

21  until and unless he proved that he was not David Rojo," defendants Midland Funding

22  and MCM violated sections 1788.10(f), 1788.13(j), and 1788.15(a) of the Rosenthal

23  Act.  Dkt. 49 at 27.  None of these actions, however, suggest defendants Midland

24  Funding or MCM made threats to take any prohibited actions, made false

25  representations about a legal proceeding, or did not know that service of process had

26  not been legally effected.  See Cal. Civ. Code §§ 1788.10(f), 1788.13(j), and 1788.15(a).

27

28

1    The Court, therefore, GRANTS Defendants' Motion as to Plaintiff's second

2 cause of action under sections 1788.10(f), 1788.13(j), and 1788.15(a) of the Rosenthal

3 Act.

4          **c.    Defendants Midland Funding and MCM Have Not Met**

5                **Their Burden in Showing They Are Entitled to the "Bona**

6                **Fide Error" Defense**

7    Similar to the FDCPA, the Rosenthal Act exempts debt collectors from liability

8 if they show by a "preponderance of evidence that the violation was not intentional

9 and resulted notwithstanding the maintenance of procedures reasonably adapted to

10 avoid any such violation." Cal. Civ. Code § 1788.30(e).

11    As discussed above, defendants Midland Funding and MCM have failed to

12 meet their burden of demonstrating entitlement to summary judgment on the alleged

13 FDCPA claims due to the bona fide error defense.  Hence, defendants fail to meet

14 their burden of establishing entitlement to summary judgment on the alleged

15 Rosenthal Act claims due to the bona fide error defense.  See Castillo v. Nationstar

16 Mortg. LLC, No. 15-CV-01743-BLF, 2016 WL 6873526, at *7 (N.D. Cal. Nov. 22,

17 2016) (finding defendant did not raise a triable issue showing it maintained procedures

18 "reasonably adapted" to avoid errors defendant identified as having caused the

19 wrongful collection and thus could not satisfy its burden under the bona fide error

20 defense to liability under the Rosenthal Act).

21    Accordingly, defendants Midland Funding and MCM have not met their

22 burden of establishing the bona fide error defense to the Rosenthal Act.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

33

1  **C.      DEFENDANT ENCORE IS ENTITLED TO SUMMARY**
2  **JUDGMENT ON PLAINTIFF'S INTRUSION UPON SECLUSION**
3  **CLAIM, BUT DEFENDANTS MIDLAND FUNDING AND MCM**
4  **ARE NOT ENTITLED TO SUMMARY JUDGMENT ON**
5  **PLAINTIFF'S INTRUSION UPON SECLUSION CLAIM**

6      **1.      Applicable Law**

7      An action for invasion of privacy by intrusion upon seclusion has two

8  elements: (1) an intrusion into a private place, conversation, or matter, (2) in a manner

9  highly offensive to a reasonable person. <u>Taus v. Loftus</u>, 40 Cal. 4th 683, 725 (2007);

10 <u>see also</u> <u>Deteresa v. Am. Broad. Cos., Inc.</u>, 121 F.3d 460, 465 (9th Cir. 1997) ("One

11 who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of

12 another or his private affairs or concerns, is subject to liability to the other for

13 invasion of his privacy, if the intrusion would be highly offensive to a reasonable

14 person."). The intrusion must be intentional. <u>Taus</u>, 40 Cal. 4th at 725. Additionally,

15 the plaintiff must have had an objectively reasonable expectation of seclusion or

16 solitude in the place, conversation, or data source. <u>Shulman v. Grp. W Prods., Inc.</u>,

17 18 Cal. 4th 200, 232 (1998). To determine whether conduct is "offensive," courts

18 consider "all the circumstances of the intrusion, including its degree and setting and

19 the intruders 'motives and objectives.'" <u>Id.</u> at 236 (citation omitted).

20     **2.      Analysis**

21         **a.      Defendant Encore**

22     The undisputed evidence demonstrates defendant Encore merely owns

23 defendants Midland Funding and MCM. Larsen Decl., ¶ 5. There is no evidence

24 defendant Encore engaged in debt collection activity or had any interactions with

25 Plaintiff. Therefore, the Court cannot find defendant Encore (1) intruded upon

26 Plaintiff's private place, conversation, or matter (2) in a matter highly offensive to a

27 reasonable person. <u>See</u> <u>Taus</u>, 40 Cal. 4th at 725.

28

34

1    Thus, there is no genuine issue of material fact and, with respect to defendant

2    Encore, the Court GRANTS Defendants' Motion as to Plaintiff's fourth cause of

3    action for intrusion upon seclusion.

4                    **b.    Defendants Midland Funding and MCM**

5    With respect to defendants Midland Funding and MCM, however, a genuine

6    issue of material fact exists as to whether they intruded upon Plaintiff's private affairs

7    or concerns by intentionally issuing a writ of garnishment on Plaintiff's bank.

8    Specifically, defendant MCM instructed the sheriff to levy Plaintiff's bank account by

9    directing the sheriff to levy a bank account associated with Plaintiff's social security

10   number, Larsen Decl., ¶ 15, Ex. 7.  A reasonable factfinder could find that a writ of

11   garnishment on Plaintiff's bank could intrude upon Plaintiff's private affairs because a

12   bank account holder generally does not expect anyone, except those with prior

13   authorization, to levy a bank account.  See Nayab v. Cap. One Bank (USA), N.A., 942

14   F.3d 480, 491 (9th Cir. 2019) (noting an intrusion upon seclusion may involve some

15   form of investigation or examination into a person's private concerns, such as

16   examining a person's private bank account (citation and quotation marks omitted)).

17   Moreover, a genuine issue of material fact remains as to whether defendants

18   Midland Funding and MCM's levy of Plaintiff's bank account would be highly

19   offensive to a reasonable person.  While defendants Midland Funding and MCM were

20   legally entitled to issue a writ of garnishment on Plaintiff's bank account, it remains in

21   dispute whether defendants Midland Funding and MCM should have known they

22   were directing the sheriff to levy the incorrect bank account and whether their

23   procedures, including "scrubs," were reasonably adapted to avoid a levy on the

24   incorrect account.  Ultimately, it remains for a trier of fact to decide based on a

25   number of factors, including the context, the conduct and circumstances surrounding

26   the levy, and defendants Midland Funding and MCM's motives and objectives,

27   whether defendants Midland Funding and MCM levied Plaintiff's bank account in a

28   manner highly offensive to a reasonable person.  Shulman, 18 Cal. 4th at 236; see also

1     Deteresa, 121 F.3d at 465 ("[W]hat is 'highly offensive to a reasonable person'

2     suggests a standard upon which a jury would properly be instructed.").

3         Thus, a genuine issue of material fact remains as to whether defendants

4     Midland Funding and MCM intentionally intruded upon Plaintiff's private affairs or

5     concerns in a manner that is highly offensive to a reasonable person.  Therefore, with

6     respect to defendants Midland Funding and MCM, the Court DENIES Defendants'

7     Motion with respect to Plaintiff's fourth cause of action for intrusion upon seclusion.

8     **D.**     **DEFENDANT ENCORE IS ENTITLED TO SUMMARY**

9         **JUDGMENT ON PLAINTIFF'S UNFAIR COMPETITION CLAIM,**

10         **BUT DEFENDANTS MIDLAND FUNIDNG AND MCM ARE NOT**

11         **ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S**

12         **UNFAIR COMPETITION LAW CLAIM**

13         **1.**     **Applicable Law**

14         Under the California Unfair Competition Law ("UCL"), unfair competition

15     "include[s] any unlawful, unfair or fraudulent business act or practice[.]"  Cal. Bus. &

16     Prof. Code § 17200.  California's UCL's "coverage is sweeping, embracing anything

17     that can properly be called a business practice and that at the same time is forbidden

18     by law."  Cel-Tech Comm'n, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163,

19     165 (1999) (internal quotation marks omitted).  "By proscribing 'any unlawful'

20     business practice, [California's UCL] borrows violations of other laws and treats them

21     as unlawful practices that the [UCL] makes independently actionable."  Id.  "Virtually

22     any law—federal, state or local—can serve as a predicate for" liability under

23     California's UCL.  L. Offs. of Mathew Higbee v. Expungement Assistance Servs., 214

24     Cal. App. 4th 544, 553 (2013) (internal quotation marks and citation omitted); see also

25     del Campo v. Am. Corrective Counseling Servs., Inc., 254 F.R.D. 585, 595 n. 8 (N.D.

26     Cal. 2008) ("[A]n FDCPA violation serves as a predicate for liability under the

27     [California's UCL].").

28     ///

1  **2.**  **Analysis**

2  **a.**  **Defendant Encore**

3  Defendant Encore has met its burden in proving it is entitled to summary

4  judgment on Plaintiff's claims pursuant to the FDCPA, Rosenthal Act, and intrusion

5  upon seclusion claim.  Because there are no facts showing, nor any allegations that,

6  defendant Encore has violated any other laws, defendant Encore has met its burden

7  in proving it is entitled to summary judgment on Plaintiff's claim pursuant to UCL.

8  Therefore, with respect to defendant Encore, the Court GRANTS Defendants'

9  Motion with respect to Plaintiff's third cause of action pursuant to sections 17200 to

10  17210 of the California Business and Professions Code.

11  **b.**  **Defendants Midland Funding and MCM**

12  Because defendants Midland Funding and MCM have not met their burden in

13  proving they are entitled to summary judgment on Plaintiff's claims pursuant to

14  sections 1692d and 1692e of the FDCPA and 1788.17 of the Rosenthal Act as well as

15  Plaintiff's intrusion upon seclusion claim, defendants Midland Funding and MCM

16  have failed to meet their burden in proving they are entitled to summary judgment on

17  Plaintiff's claim pursuant to the UCL.  See Robinson, 654 F. Supp. 2d at 1064

18  ("Because Plaintiff has stated claims under the FDCPA and [Rosenthal Act] against all

19  Defendants, Plaintiff also states a claim under the California UCL against all

20  Defendants.").

21  Therefore, with respect to defendants Midland Funding and MCM, the Court,

22  DENIES Defendants' Motion with respect to Plaintiff's third cause of action

23  pursuant to sections 17200 to 17210 of the California Business and Professions Code.

24  **VI.**

25  **ORDER**

26  For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN

27  PART Defendants' Motion.

28

1   With respect to defendant Encore, the Motion is GRANTED as to all of

2 Plaintiff's claims.  Defendant Encore is, thus, DISMISSED from the instant action

3 with prejudice.

4   With respect to defendants Midland Funding and MCM, the Motion is

5 DENIED as to Plaintiff's claims in his first cause of action pursuant to sections

6 1692d and 1692e of the Fair Debt Collection Practices Act; claims in his second cause

7 of action pursuant to section 1788.17 of California's Rosenthal Fair Debt Collection

8 Practices Act; claims in his third cause of action pursuant to sections 172000 to 17210

9 of the California Business and Professions Code; and claims in his fourth cause of

10 action for intrusion upon seclusion.

11   However, with respect to defendants Midland Funding and MCM, the Motion

12 is GRANTED as to Plaintiff's claims in his first cause of action pursuant to sections

13 1692f and 1692g of the Fair Debt Collection Practices Act and claims in his second

14 cause of action pursuant to sections 1788.10(f), 1788.13(j), and 1788.15(a) of

15 California's Rosenthal Fair Debt Collection Practices Act.  Those causes of action are

16 DISMISSED with prejudice and without leave to amend.

17   **IT IS SO ORDERED.**

18

19 Dated: 5/19/2021

20     _____

      HONORABLE KENLY KIYA KATO

21      United States Magistrate Judge

22

23

24

25

26

27

28